**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

BAD VIBES FOREVER, LLC,

      Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

      Defendants.

Case No.: 1:22-cv-02590

Judge John J. Tharp

Magistrate Judge M. David Weisman

### DECLARATION OF ROBERT A. CELESTIN, ESQ.

I, Robert A. Celestin, Esq., declare and state as follows:

1.      This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2.      I am the legal representative of BAD VIBES FOREVER, LLC ("BAD VIBES"). I am knowledgeable about or have access to business records concerning all aspects of the brand protection operation of BAD VIBES including, but not limited to, its trademarks and other intellectual property, sales, online sales, advertising, marketing, media coverage, and associated international operations. I make this declaration from matters within my own knowledge save where otherwise stated.

3.      Plaintiff, BAD VIBES, is a Limited Liability Company organized and existing under the laws of Florida.

4.      Plaintiff, BAD VIBES, acts as the Sales, Marketing, Design and Distribution arm for XXXTENTACION Products worldwide.

5.      BAD VIBES is in the business of developing, marketing, selling and

1

distributing XXXTENTACION Products. XXXTENTACION, the professional name for Jahseh Dwayne Ricardo Onfroy, was an American rapper, singer, and songwriter that was tragically killed in 2018. Even after death, XXXTENTACION is considered a leading figure in the emo-rap and SoundCloud rap genres which garnered mainstream attention during the mid-late 2010s. XXXTENTACION's debut album "17" is certified double-platinum in the US and reached number two on the Billboard 200. The song "Sad", reached number one on the Billboard Hot 100, and had amassed more than a billion views on YouTube and 1.6 billion streams on Spotify by July 2021, as well as being certified Diamond by August 2021. XXXTENTACION is the best-selling emo rap artist of all time.

6.      Plaintiff is the official source of authentic XXXTENTACION products:

https://shopxxxtentacion.com



7.      BAD VIBES is the owner of the trademark registrations for the XXXTENTACION Trademarks, including U.S. Trademark Registration Nos. 5,654,600;

2

5,771,321; and 5,627,992 (Collectively the "XXXTENTACION Trademarks").

8. The XXXTENTACION Trademarks are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the above XXXTENTACION Trademarks are attached hereto as Exhibit 1.

9. The XXXTENTACION Trademarks are distinctive and identify the merchandise as goods from BAD VIBES.

10. The XXXTENTACION Trademarks have been continuously used and never abandoned.

11. BAD VIBES has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the XXXTENTACION Trademarks. As a result, products associated with the XXXTENTACION Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from BAD VIBES.

12. The success of the XXXTENTACION brand has resulted in its significant counterfeiting. Consequently, BAD VIBES is implementing an anti-counterfeiting program and is investigating suspicious websites and online marketplace listings identified through external vendors in proactive internet sweeps. BAD VIBES has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms, including the fully interactive commercial internet stores operating under the Defendant Internet Stores identified in Schedule A which is attached to the Complaint (collectively, the "Defendant Internet Stores"),  which were offering for sale, selling, and importing counterfeit products in connection with counterfeit versions of BAD VIBES's federally registered XXXTENTACION Trademarks (the "Counterfeit XXXTENTACION Products") to consumers in this judicial district and throughout the United States. Despite BAD VIBES's enforcement efforts online, Defendants have

3

persisted in creating the Defendant Internet Stores.

13. I perform, supervise, and/or direct investigations related to internet-based infringement of the XXXTENTACION Trademarks. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit XXXTENTACION Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit XXXTENTACION Products were being offered for sale to the United States, including Illinois. This conclusion was reached through visual inspection of the products listed for sale on the website, the price at which the Counterfeit XXXTENTACION Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the United States, including Illinois, and because Defendants and their websites do not conduct business with BAD VIBES and do not have the right or authority to use the XXXTENTACION Trademarks for any reason. True and correct copies of screenshot printouts showing the active Defendant Internet Stores reviewed are attached as Exhibit 2.

14. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers selling genuine XXXTENTACION Products. Many of the Defendant Internet Stores look sophisticated and accept payment in, without limitation, U.S. dollars via credit cards, Western Union, Amazon and PayPal. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security,

4

VeriSign®, Visa®, MasterCard®, and PayPal® logos. BAD VIBES has not licensed or authorized Defendants to use its XXXTENTACION Trademarks, and none of the Defendants are authorized retailers of genuine XXXTENTACION Products.

15.     Upon information and belief, Defendants also deceive unknowing consumers by using the XXXTENTACION Trademarks without authorization within the content, text, and/or meta tags of their web sites in order to attract various search engines crawling the internet looking for websites relevant to consumer searches for XXXTENTACION Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine XXXTENTACION Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new internet stores to the top of search results after others are shut down.

16.     Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant Internet Stores often use privacy services that conceal the owners' identity, contact and internet IP address information. Upon information and belief, Defendants regularly create new Internet Stores on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

17.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant

Internet Stores have virtually identical layouts, even though different aliases were used to register the respective internet stores. In addition, Counterfeit XXXTENTACION Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit XXXTENTACION Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same Internet Store registration patterns, unique product listing description and layouts, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced similar hosting services, similar name servers, and the use of the same text and images.

18. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new Internet Stores under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

19. Counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as, without limitation, Amazon and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of BAD VIBES's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal or similar accounts to off-shore bank accounts outside the

jurisdiction of this Court.

20. Monetary damages alone cannot adequately compensate BAD VIBES for ongoing infringement because monetary damages fail to address the loss of control of and damage to BAD VIBES's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to BAD VIBES's reputation and goodwill by acts of infringement.

21. BAD VIBES's goodwill and reputation are irreparably damaged when the XXXTENTACION Trademarks are used on goods not authorized, produced, or manufactured by BAD VIBES. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to BAD VIBES's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

22. BAD VIBES is further irreparably harmed by the unauthorized use of the XXXTENTACION Trademarks because counterfeiters take away BAD VIBES's ability to control the nature and quality of products used with the XXXTENTACION Trademarks. Loss of quality control over goods using the XXXTENTACION Trademarks and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

23. The sale of Counterfeit XXXTENTACION Products using the XXXTENTACION Trademarks also causes consumer confusion, which weakens BAD VIBES's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit XXXTENTACION Products they have purchased originated from BAD VIBES will come to believe that BAD VIBES offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine XXXTENTACION Products, resulting in a loss, or undermining of BAD VIBES's reputation and goodwill.

24.     BAD VIBES is further irreparably damaged due to a loss in exclusivity. The XXXTENTACION Products are meant to be exclusive. BAD VIBES's extensive marketing and distribution of XXXTENTACION Products are aimed at growing and sustaining sales of XXXTENTACION Products. The XXXTENTACION Trademarks are distinctive and signify to consumers that the products originate from BAD VIBES and are manufactured to BAD VIBES's high-quality standards. When counterfeiters use the XXXTENTACION Trademarks on goods without BAD VIBES's authorization, the exclusivity of BAD VIBES's products, as well as BAD VIBES's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

25.     BAD VIBES will suffer immediate and irreparable injury, loss, or damage if an ex parte Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 17, 2022.

/s/ _____

Robert A. Celestin, Esq,
Legal representative of BAD
VIBES FOREVER, LLC

8